UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **CARRIUS L. WILLIAMS** | **CIVIL ACTION NO. 18-1299-P** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **MELVIN SMITH, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report, and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Carrius L. Williams ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 3, 2018. Plaintiff is incarcerated at the Caddo Correctional Center in Shreveport, Louisiana. He complains his civil rights were violated during his police interviews. Plaintiff names Detective Melvin Smith, the Shreveport Police Department, and Detective B. Turpen as defendants.

Plaintiff claims that while detained at the Caddo Correctional Center between October 1, 2017 and October 31, 2017, he was interviewed by Detective Melvin Smith of the Shreveport Police Department four times. He claims his constitutional rights were violated during three of the four recorded interviews.

Plaintiff claims he had been recently extradited from Texas to Louisiana to face a charge of aggravated burglary. He claims he was called out of his cell to be interviewed

by Detective Melvin Smith and Detective John Doe. He claims Detective Smith read him his Miranda rights and asked him if he wanted to make a statement. Plaintiff claims he then made a statement about the alleged aggravated burglary that took place on July 14, 2017.

Plaintiff claims that before he could finish his statement, Detective Smith abruptly cut him off and told him that he was not there to question him about a stolen gun or burglary. He claims Detective Smith told him that he was there to question him about a robbery and/or home invasion. Plaintiff claims he was in complete shock and was confused. He claims Detective Smith never read him his Miranda rights concerning the alleged armed robbery and/or home invasion. He claims Detective Smith then showed him a video of the scene of the home invasion which showed him walking up to the victim's front door and knocking, looking through the window, and then running out of the yard. Plaintiff claims he then remembered the night of the incident.

Plaintiff claims Detective Smith then showed him a video of two or three individuals jumping over a gate. Plaintiff claims Detective Smith asked him what he knew about the robbery and if he had anything to do with it. He claims he told Detective Smith that he was not aware of the robbery and had nothing to do with it. He claims Detective Smith threatened to charge him with armed robbery if he did not give him information he could use. Plaintiff claims that after he was threatened with losing his children and being charged again with armed robbery, he told Detective Smith that if he guaranteed him that he would not be used as a witness, he would make a statement about what he saw that night. Plaintiff

claims Detective Smith agreed to his terms and signed the statement/contract guaranteeing that he would be completely left out of the matter if he told him what he saw.

Plaintiff claims that on October 10, 2017, he was interviewed a second time by Detective Smith. He claims Detective Smith had him view several pages of photo lineups and asked him if he could identify any of the men he saw the night of the robbery. He claims he informed Detective Smith that he only caught a quick glimpse of the crowd and could not clearly pick a face out of the crowd. He claims he did tell Detective Smith that blond tip dreadlocks were noticeable and reminded him of someone he has seen before, but he could not be certain.

Plaintiff claims he looked at the photo lineups against his will and told Detective Smith that two or three of the faces looked like the person he saw, but he was not certain. Plaintiff claims Detective Smith illegally coerced and instructed him to pick a specific mug shot (Blaise Williams) out of a photo lineup by circling it and signing his initials besides it against his will. He claims Detective Smith threatened to charge him with a crime if he did not give him information.

Plaintiff claims he was interviewed a third time by Detective Smith and Detective Turpen. He claims Detective Smith was frustrated and spoke to him as if he had given him the wrong information. He claims he did as Detective Smith instructed him during the previous interview. He claims Detective Turpen tried to have him identify the person in the large picture. Plaintiff claims the interview became unprofessional because of all the pressure and was abruptly stopped by the emergency response team.

Plaintiff claims that the next time he saw Detective Smith, he informed him that he was going to be charged with armed robbery. He claims the video surveillance of the victim's home proves that he was not one of the persons that entered the home and committed the crime.

He claims that on August 15, 2018, Detective Smith falsely testified during his preliminary examination hearing that he admitted to committing the armed robbery and identified others who were involved. Plaintiff claims Detective Smith signed an agreement which guaranteed him absolute immunity if he told him what he witnessed the night of the robbery. He claims Detective Smith breached this contract.

Plaintiff claims that because of the actions of Defendants, he now has post-traumatic stress disorder, mental anguish, anxiety, and claustrophobia. He claims the armed robbery charge was amended to principle to simple burglary and he was convicted. Plaintiff maintains that he is innocent.

Accordingly, Plaintiff seeks monetary compensation and for the conviction and sentence to be vacated.

## LAW AND ANALYSIS

**Heck Claim**

Plaintiff claims he was wrongly convicted and sentenced because of the actions of Defendants. Plaintiff is seeking monetary damages for an allegedly unconstitutional conviction and sentence. The United States Supreme Court held that in order to recover monetary compensation for an allegedly unconstitutional conviction or sentence or for

"harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a prisoner must show that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas." Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 2372 (1994).  Courts have also extended the holding in Heck to claims seeking injunctive or declaratory relief pursuant to 42 U.S.C. § 1983.  See Edwards v. Balisok, 520 U.S. 641,648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997); Clark v. Stalder, 154 F.3d 186, 190-91 (5th Cir. 1998).  Heck involved a civil rights claim brought by a state prisoner.  The Court dismissed the Section 1983 suit until plaintiff could demonstrate that his conviction or sentence had been invalidated.

When a claim comes within the parameters of the Heck teachings, it is not cognizable under 42 U.S.C. § 1983 so long as the validity of the conviction or sentence has not been called into question as defined therein, which requires dismissal of claims not meeting its preconditions for suit.  See Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

Plaintiff is seeking monetary damages for civil rights violations under Section 1983; therefore, he must prove his conviction or sentence have been invalidated.  He has not met this precondition and his complaint must be dismissed until such time that he can demonstrate that his conviction and/or sentence have been invalidated.

**Habeas Claim**

Plaintiff alleges his conviction and sentence are illegal and seeks to have his conviction reversed and his immediate release from incarceration. Although Plaintiff submitted his claim on the standardized civil rights complaint form, it is incumbent upon this court to determine preliminarily whether the facts alleged establish a claim under 42 U.S.C. § 1983 of the Civil Rights Act, or whether the claim is one which must be pursued initially in a habeas corpus proceeding. This determination is made by focusing on "the scope of relief actually sought." Alexander v. Ware, 417 F.2d 416, 419 (5th Cir. 1983); Serio v. Members of the La. State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987).

When a claimant challenges the very fact or duration of his physical confinement and seeks an immediate release or speedier release from confinement as relief, he must pursue his claim through an application for writ of habeas corpus. See Preiser v. Rodriguez, 411 U.S. 475, 500, 93 S.Ct. 1827 (1973). In accordance with this guideline, the United States Court of Appeals for the Fifth Circuit adopted a "per se rule barring consideration of claims under [42 U.S.C.] § 1983 that directly or indirectly challenge the constitutionality of the state conviction or sentencing decision under which the claimant is currently confined." Serio, 821 F.2d at 1117 (citing Fulford v. Klein, 529 F.2d 377, 381 (5th Cir. 1976), adhered to en banc, 550 F.2d 342 (1977)). Plaintiff is challenging his conviction and sentence and his claim clearly falls within the strictures of this guideline.

However, habeas relief is unavailable to Plaintiff at this time. Although such relief is available to a person who is in custody "in violation of the Constitution or laws or treaties

of the United States," 28 U.S.C. § 2254, the right to pursue habeas relief in federal court is not unqualified. It is well settled that a petitioner seeking federal habeas corpus relief cannot collaterally attack his state court conviction or sentence in federal court until he has exhausted all available state remedies. See 28 U.S.C. § 2254(b)(1)(A); Rose v. Lundy, 455 U.S. 509 (1982); Minor v. Lucas, 697 F.2d 697 (5th Cir. 1983).

This requirement is not a jurisdictional bar, but a procedural one erected in the interest of comity to provide state courts first opportunity to pass upon and to correct alleged constitutional violations. See Picard v. Connor, 404 U.S. 270, 275 (1971); Rose v. Lundy, 455 U.S. 509 (1982). From the information provided in Petitioner's complaint, it does not appear that he has exhausted his available state remedies as to the claims he raises in his petition. Therefore, Plaintiff is not entitled to habeas relief at this time because he has failed to exhaust his state court remedies.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in

fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights claims seeking monetary damages for his allegedly unconstitutional conviction and sentence be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e) until such time as the Heck conditions are met. **IT IS FURTHER RECOMMENDED** that Plaintiff's request for habeas relief be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and

that were not objected to by the aforementioned party.  See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under Section 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within **fourteen (14) days** from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 19th day of August, 2019.

Mark L. Hornsby
U.S. Magistrate Judge